IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| S.P. RICHARDS COMPANY, a corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07 CV 1753 |
| BUSINESS SUPPLY CORP., a corporation d/b/a Officemart.com, Inc., MICHAEL DELVIN, and DONNA DELVIN, | ) ) ) ) ) | Judge Joan H. Lefkow |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, S.P. Richards Company ("S.P. Richards"), filed a three-count complaint against defendants, Business Supply Corporation ("Business Supply"), Michael Delvin, and Donna Delvin (collectively, "defendants").[1] Count I is a breach of contract claim against Business Supply. Count II is a claim for recovery on a promissory note against Business Supply, Michael Delvin, and Donna Delvin. Count III is a breach of guaranty claim against Michael Delvin and Donna Delvin. Before the court is S.P. Richards's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on all three counts. For the following reasons, S.P. Richards's motion [#33] will be granted.

---

[1] This court has jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. S.P. Richards is a Georgia corporation with its principal place of business in the state of Georgia. Michael and Donna Delvin are citizens of Illinois and reside within the Northern District of Illinois. Business Supply is an Illinois corporation with its principal place of business in Illinois.

## LOCAL RULE 56.1

Under Local Rule 56.1, a party moving for summary judgment must file a statement of material facts. N.D. Ill. R. 56.1(a). The rule also requires a party opposing a motion for summary judgment to file, in addition to a responsive memorandum of law, a response to the movant's statement of material facts. N.D. Ill. R. 56.1(b)(3). Failing to file such a response has adverse consequences: "All material facts set forth in the statement required of the moving party *will be deemed to be admitted* unless controverted by the statement of the opposing party." *Id.* (emphasis added). S.P. Richards filed a statement of material facts as required by Local Rule 56.1. Defendants, however, have failed to file a response to S.P. Richards's statement of material facts. All material facts set forth in S.P. Richards's statement are therefore deemed admitted to the extent that they are adequately supported by citations to appropriate evidence. *See id.*; *see also Waldridge* v. *Am. Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir. 1994) ("We have . . . repeatedly upheld the strict enforcement of [Local Rule 56.1], sustaining the entry of summary judgment when the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

## BACKGROUND

S.P. Richards is a Georgia corporation in the business of selling office supplies. Pl.'s Local Rule 56.1 Statement of Uncontested Facts (hereinafter "SoF") at ¶¶ 4, 6. Business Supply is an Illinois corporation whose president was Michael Delvin and whose secretary was Donna Delvin. SoF ¶¶ 2, 10. Business Supply also did business under the name of "Officemart.com." *Id.* ¶ 8.

On November 23, 2001, Business Supply applied for a credit account with S.P. Richards by means of a credit application executed by Michael Delvin. *Id.* ¶¶ 9, 11. This application

provides that "should it become necessary to place the account with a collection agency or attorney, the Applicant agrees to pay all collection costs and attorney fees in addition to all other sums due." Pl.'s Mot., Ex. 1; SoF ¶ 12. At the request of Business Supply, S.P. Richards sold and delivered office supplies to Business Supply. *Id.* ¶ 7. There is an unpaid balance of $19,420.89 due for these goods. *Id.*

S.P. Richards is the holder of a certain promissory note executed by Business Supply, Michael Delvin, and Donna Delvin. *Id.* ¶ 13. There is a principal balance of $101,199.42 due on this note, which is in default. *Id.*

On November 13, 2006, Michael and Donna Delvin personally guaranteed the obligations of Business Supply to S.P. Richards. *Id.* ¶ 16.

## STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in the pleadings, depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) & advisory committee's notes.

The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one which might affect the outcome of the suit. *Insolia*, 216 F.3d

at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 261, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## DISCUSSION

Because the defendants have asserted the same affirmative defenses in response to all of S.P. Richards's claims, the court will first consider whether S.P. Richards has presented evidence sufficient to satisfy the elements of each claim. Then, after discussing the three claims, the court will address the affirmative defenses raised by the defendants.

## I. S.P. Richards's Claims

Count I is a claim against Business Supply for breach of contract. The elements of a breach of contract claim are "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Assocs., Inc.* v. *Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 43, 323 Ill. App. 3d 15, 256 Ill. Dec. 488 (Ill. App. Ct. 1st Dist. 2001) (citing *Gallagher Corp.* v. *Russ*, 721 N.E.2d 605, 611, 309 Ill. App. 3d 192, 242 Ill. Dec. 326 (1999)).

S.P. Richards has presented evidence showing that the parties had an open account arrangement constituting a valid and enforceable contract and that S.P. Richards has performed on this contract: S.P. Richards delivered office supplies which were charged to the account and accepted by Business Supply. SoF ¶ 7; Defs.' Answer to Pl.'s Compl. ¶ 7; *see also Calo, Inc.* v. *AMF Pinspotters, Inc.*, 176 N.E.2d 1, 5, 31 Ill. App. 2d 2 (Ill. App. Ct. 1st Dist. 1961) (stating that an enforceable contract may be demonstrated with proof of offer and acceptance or partial

4

performance). The facts stated by S.P. Richards and admitted by Business Supply also satisfy the elements of breach and damages. Business Supply's failure to pay for the deliveries made by S.P. Richards, *see* SoF ¶ 7, constitutes a breach of its obligations under the agreement. *See Chapman* v. *Engel*, 865 N.E.2d 330, 333, 372 Ill. App. 3d 84, 310 Ill. Dec. 6 (Ill. App. Ct. 1st Dist. 2007) (holding that a party breaches contract when it fails to perform a promise). This failure to pay also establishes that S.P. Richards has been damaged by Business Supply's actions. *See Indeck Energy Servs., Inc.* v. *NRG Energy, Inc.*, No. 03 C 2265, 2004 WL 2095554, at *9 (N.D. Ill. Sept. 16, 2004) (finding that failure to pay satisfies damage element).

S.P. Richards seeks damages of $19,420.89 for Business Supply's breach of contract. Under Illinois law, "[w]hen the buyer fails to pay the price as it becomes due the seller may recover . . . the price . . . of goods accepted." 810 Ill. Comp. Stat. 5/2-709(1).[2] It is undisputed that Business Supply accepted certain office supplies delivered by S.P. Richards at a contract price of $19,420.89 and that Business Supply has not paid that amount. SoF ¶ 7. S.P. Richards has thus presented evidence sufficient to establish that it is entitled to summary judgment on Count I.

Count II is a claim against all three defendants for recovery on the promissory note. In order to recover on an a promissory note, a plaintiff who has produced the instrument must prove (1) "the validity of the signatures on the instrument" and (2) the plaintiff's "entitlement to enforce the instrument." *Strosberg* v. *Brauvin Realty Servs., Inc.*, 691 N.E.2d 834, 839, 295 Ill. App. 3d 17, 229 Ill. Dec. 361 (Ill. App. Ct. 1st Dist. 1998) (citing 810 Ill. Comp. Stat. Ann. 5/3-308 (West 1996)). S.P. Richards has produced the relevant note. Pl.'s Mot., Ex. 8. It is therefore appropriate to apply this two-prong test. A plaintiff who satisfies these elements will

---

[2] This provision is an adaptation of section 2-709 of the Uniform Commercial Code. *Cf.* UCC § 2-709.

be entitled to payment on the note "unless the defendant proves a defense or claim in recoupment." 810 Ill. Comp. Stat. 5/3-308(b).

With respect to the first element of the test, the validity of defendants' signatures on the note is not disputed. *See* SoF ¶ 13. As to the second element, the court may find that S.P. Richards is entitled to enforce the note if it is "the holder of the instrument." 810 Ill. Comp. Stat. 5/3-301. It is undisputed that S.P. Richards is the holder of the note. SoF ¶ 13. S.P. Richards has thus established that it is entitled to enforce and recover on the note. S.P. Richards has presented evidence that there is a principal amount of $100,199.42 due on the note. *See id.* ¶¶ 13, 15. S.P. Richards has thus presented evidence sufficient to establish that it is entitled to summary judgment on Count II.

Count III is a breach of guaranty claim against Michael Delvin and Donna Delvin. To prevail on a claim to enforce a guaranty, a plaintiff must "enter[] proof of the original indebtedness, the debtor's default and the guarantee." *Mid-City Indus. Supply Co.* v. *Horowitz*, 476 N.E.2d 1271, 1277, 132 Ill. App. 3d 476, 87 Ill. Dec. 279 (Ill. App. Ct. 1st Dist. 1985); *accord LaSalle Bus. Credit, Inc.* v. *Lapides*, No. 00 C 8145, 2003 WL 722237, at *13 (N.D. Ill. Mar. 3, 2003). It is undisputed that S.P. Richards is the holder of a certain promissory note executed by Business Supply, Michael Delvin, and Donna Delvin,[3] that there is a principal balance due and owing of $101,199.42 on this note, and that this note is in default. *See* SoF ¶¶ 13–14. It is also undisputed that Michael and Donna Delvin personally guaranteed the obligations of Business Supply. SoF ¶ 16. S.P. Richards has thus presented evidence sufficient to establish that it is entitled to summary judgment on Count III.

---

[3] Additionally, as discussed above, S.P. Richards has established a prima facie case with respect to Count I, its claim that Business Supply owes S.P. Richards $19,420.89 on the account.

## II. Defendant's Affirmative Defenses

In its responsive pleading, Business Supply relies on three affirmative defenses to S.P. Richards's claims: (1) "breach of course of performance"; (2) "prevention of performance of contract by plaintiff"; and (3) "failure of consideration." Defs.' Answer to Pl.'s Compl. at 5–6. In defendants' own words,

> The essence of the affirmative defenses is that the Plaintiff precipitated the instant case by its actions of changing the terms of payment from sixty (60) days of delivery of product to COD, which constituted a breach of course of performance, prevention of performance of contract, and failure of consideration.
>
> * * *
>
> [A]n employer [*sic*] for the Plaintiff, Lois Childress changed the terms of payment from sixty (60) days to COD. This materially affected [defendants'] ability to conduct their business and perform under the contract. . . . [A]fter they were put on COD, [defendants] negotiated terms with the Plaintiff and were given a twenty thousand ($20,000) dollar line of credit. [A]lthough [defendants] signed a Promissory Note in good faith in part based on the establishment of the line of credit it was not honored[. T]hat lead [*sic*] to the instant case. The Defendants . . . attempted to give the Plaintiff $10,000 in order to receive the same amount in product, the Plaintiff refused to release the product and demanded the entire nine [*sic*] thousand ($19,000) that was owed although the of [*sic*] the line of credit had been established.

Defs.' Answer to Pl.'s Mot. at 1–2 (citations omitted). The gravamen of defendants' defenses (as best the court can discern it) appears to be that (1) S.P. Richards changed the terms of payment from 60 days after delivery to cash on delivery; and (2) this change precipitated defendants' financial collapse.

As noted above, S.P. Richards filed a statement of material facts as required by Local Rule 56.1, but defendants failed to file either a response to S.P. Richards's statement of material facts or a statement of additional material facts. Rather, defendants filed only an "Answer to Plaintiff's Summary Judgment Motion," which appears to be a memorandum of law in response to S.P. Richards's motion for summary judgment. Included as exhibits to that document are the affidavits of Donna and Michael Delvin. In Michael Delvin's affidavit, for example, he attests,

7

"We were told by Lois Childress that she wanted the balance in full before she would release orders again. This was clearly NOT part of the agreement as we understood." Michael Delvin's Aff. (unnumbered exhibit to Defs.' Answer to Pl.'s Mot.) at 1.

The Delvins' affidavits, however, neither controvert the material facts set out in S.P. Richards Local Rule 56.1 statement nor assert facts sufficient to support any of the affirmative defenses on which defendants rely. Nowhere do defendants either identify the specific provisions of the agreement that S.P. Richards allegedly breached or articulate how such provisions relate to S.P. Richards's claims in this case. Indeed, defendants apparently negotiated both the $20,000 line of credit and the note *after* their payment terms were changed from 60 days to cash on delivery. Defs.' Answer to Pl.'s Mot. at 1–2 (noting that "after they were put on COD, [defendants] negotiated terms with the Plaintiff and were given a [$20,000] line of credit" and that "they signed a Promissory Note . . . in part based on the establishment of the line of credit").

Rather, the bulk of defendants' affidavits is composed of accusations that S.P. Richards, generally, and one of its employees, Lois Childress, in particular, were overly harsh and unforgiving in their dealings with defendants. In her affidavit, for example, Donna Delvin states,

> I called [Lois Childress] a few times that week pleading with her so we could continue to fulfill our Customers['] orders and continue to increase sales for the future. I explained that Mike recently had a near fatal heart attack which was the first of many future health and family issues for us. While recovering from his heart attack, his mother fell and broke her[] back and her health continued to fail. We have always paid our bills with [S.P. Richards], obviously, why would this huge company keep selling product to us if we did not pay them? I believe that Lois cruelly misjudged us. Had she not done so, OfficeMart.com would still be selling a minimum of $30,000 - $50,000 a month. We had a potential Buyer back in the beginning of 2007, but now I don't know. It is one thing to kick someone when they [are] down, but she basically hung us up.

Donna Delvin's Aff. (unnumbered exhibit to Defs.' Answer to Pl.'s Mot.) at 1.  Similarly, in his affidavit, Michael Delvin states,

> [Lois] told me that she was going to "Take me down" and that "My life was over as I know it" which was right after my heart attack and during other family issues.  I asked her to wait just a couple of days because I had a potential buyer for OfficeMart.com.
> * * *
> In my opinion, Lois Childress is the direct cause of the domino effect of our financial disaster that we are continuing to experience.  Her words directly reflect all of the tragic events happening to us just as she had predicted, promised and threatened almost as if she had a crystal ball vision of my future.

Michael Delvin's Aff. (unnumbered exhibit to Defs.' Answer to Pl.'s Mot.) at 2.

However unkind S.P. Richards and Childress may have been, defendants have failed to articulate—much less provide evidentiary support for—any valid legal basis to excuse their nonpayment of the balance due on either the account or the promissory note.  At most, defendants' affidavits suggest that they believe they were entitled to receive an extension of further credit from S.P. Richards.  But defendants have not presented any evidence that S.P. Richards was obligated to extend them such additional credit.  Nor have defendants filed any counterclaims to recover damages for the wrongs they suggest S.P. Richards committed against them.

## CONCLUSION AND ORDER

For the reasons discussed above, S.P. Richards's motion for summary judgment is granted as to all three counts of their complaint.  The court hereby enters judgment in favor of S.P. Richards and against Business Supply and Donna and Michael Delvin, as guarantors of

Business Supply, in the amount of $119,620.11 plus pre-judgment interest. S.P. Richards may petition the court for fees pursuant to Local Rule 54.3.⁴

Dated: September 5, 2008          Enter:_____
                                         JOAN HUMPHREY LEFKOW
                                         United States District Judge

---

⁴ The account application executed by Business Supply states, "Should it become necessary to place the account with a collection agency or attorney, the Applicant agrees to pay all collection costs and attorney fees in addition to all other sums due." Pl.'s Mot., Ex. 1; SoF ¶ 12. Under Illinois law, the court is "required to strictly construe a contractual provision for attorney fees. That is, we construe the fee-shifting provision to mean nothing more—but also nothing less—than the letter of the text." *Chapman* v. *Engel*, 865 N.E.2d 330, 333, 372 Ill. App. 3d 84, 310 Ill. Dec. 6 (Ill. App. Ct. 1st Dist. 2007).